UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIJAH DEQUON SPANN,

              Plaintiff,                    Case No. 21-cv-11036

v.                                   Paul D. Borman
                                   United States District Judge

EMPIRE FIRE AND MARINE
INSURANCE COMPANY and
ALLSTATE INSURANCE
COMPANY,

              Defendants,

and

EMPIRE FIRE AND MARINE
INSURANCE COMPANY,

              Cross-Plaintiff,

v.

ALLSTATE INSURANCE
COMPANY,

              Cross-Defendant.
_____/

## <u>OPINION AND ORDER</u>
### <u>(1) GRANTING IN PART AND DENYING IN PART DEFENDANT EMPIRE FIRE AND MARINE INSURANCE COMPANY'S MOTION</u>

1

<u>FOR SUMMARY JUDGMENT AGAINST PLAINTIFF AND
ALLSTATE INSURANCE COMPANY (ECF NO. 24), AND
(2) GRANTING ALLSTATE'S MOTION FOR SUMMARY JUDGMENT
AGAINST PLAINTIFF AND EMPIRE FIRE AND MARINE
INSURANCE COMPANY (ECF NO. 55)</u>

This case involves Plaintiff Elijah Spann's claims against Defendants Empire Fire and Marine Insurance Company (Empire) and Allstate Insurance Company (Allstate) for the payment of personal injury protection (PIP) benefits under the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq.*, stemming from a July 29, 2019 motor vehicle accident, and Cross-Plaintiff Empire's claim against Cross-Defendant Allstate seeking reimbursement of benefits Empire paid to and on behalf of Spann under the No-Fault Act.

Now before the Court are Empire's and Allstate's Motions for Summary Judgment. Empire states that it is now undisputed that Spann was logged into a digital transportation network (Uber) when the July 29, 2019, accident occurred, and that neither the applicable Empire insurance policy nor the Michigan No-Fault Act requires Empire to provide PIP benefits for an accident that occurred when Spann was logged into a digital transportation network. Empire argues that there is no genuine issue of material fact that the Empire insurance policy does not provide coverage for Spann's July 29, 2019, automobile accident, and that Allstate must reimburse Empire for PIP benefits that Empire previously paid to or on behalf of

2

Spann. Empire's motion for summary judgment is fully briefed, including supplemental briefing following additional discovery with respect to Defendant Allstate.

Allstate argues in its motion for summary judgment that the claims asserted against it by both Spann and Empire are time-barred under the Michigan No-Fault Act's one-year statute of limitations because of Spann's failure to give written notice of his alleged injuries to Allstate within one year of his accident, and barred by the No-Fault Act's one-year-back rule that bars claims for losses incurred more than one year before the action was commenced. Allstate's motion has also been fully briefed.

The Court held a hearing on both motions for summary judgment on August 2, 2023, at which counsel for Plaintiff and both Defendants appeared.

For the reasons that follow, the Court GRANTS IN PART AND DENIES IN PART Defendant Empire Fire and Marine Insurance Company's Motion for Summary Judgment Against Plaintiff and Allstate (ECF No. 24), and GRANTS Allstate's Motion for Summary Judgment Against Plaintiff and Empire (ECF No. 55).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

On July 29, 2019, Plaintiff Elijah Spann was involved in a motor vehicle accident while he was driving a 2019 Chevrolet Malibu that was owned or leased by Maven Drive LLC, a car sharing business launched by General Motors that rented vehicles to individuals for personal use and to "gig workers" for rideshare and delivery work. The 2019 Chevrolet Malibu was insured by Defendant Empire Fire and Marine Insurance Company (Empire).

#### 1.  The Empire insurance policy

The Empire insurance policy that covered the 2019 Chevrolet Malibu driven by Spann defines covered vehicles as expressly excluding vehicles while "operated by a person logged into a 'digital transportation network,' []or while the 'auto' is being used to transport persons for hire." (ECF No. 26, Empire Policy (filed under seal), PageID.681.) "Digital transportation network" is defined as "any online-enabled application, software, website or system offered or utilized by a 'transportation network company' that enables the pre-arrangement of rides." (*Id.*) "Transportation network company" is "an entity that uses a 'digital transportation network' to enable the connection of drivers and passengers for 'ride-sharing' purposes." (*Id.*) "Ride-sharing" means "transportation in a personal 'auto' of the

4

driver that is pre-arranged using a 'digital transportation network.'" (*Id.*) Empire explains that this includes, but is not limited to, Uber.

As explained further below, Uber procured insurance from Allstate for its Michigan drivers when they are logged into Uber's network. Thus, Allstate is responsible for the payment of PIP benefits under Michigan's No Fault Act when drivers are logged into Uber's network.

### 2.  Spann's request for PIP benefits from Empire

Before litigation involving Spann's PIP benefits commenced, Uber responded to an August 30, 2019, email from a claims specialist with ESIS/General Motors Claims Unit, Empire's third party claims administrator, notifying Uber of "an incident involving a 2019 Chevrolet Malibu" and inquiring as to whether Spann was logged into Uber's digital transportation network when the accident occurred. Uber responded to that email on September 2, 2019, stating "we can confirm that the driver was not logged into the application when the loss occurred." (ECF No. 24-7, 9/3/2017 Email, PageID.587-88.)

After litigation commenced in a separate action against Empire for PIP benefits by one of Spann's providers, Uber produced records in response to Empire's February 9, 2021, subpoena, again indicating that Spann was not logged into the Uber digital transportation network at the time of the July 29, 2019, accident. (ECF

No. 24-7, Elizabeth Favaro Aff. ¶¶ 8-9, PageID.582.) (ECF No. 27, Uber records (under seal).)

However, in Spann's August 3, 2021, written discovery responses in this case, he admitted that he was logged into a digital transportation network (Uber) at the time of the accident "in a prearranged ride." (ECF No. 24-7, Spann's discovery responses, PageID.622.)

After receiving Spann's August 3, 2021, discovery responses, Empire contacted Uber yet again to re-confirm that it had no record of activity by Spann on Uber's application at the time of the accident on July 29, 2019. (ECF No. 24-7, Favarro Aff. ¶ 12, PageID.583.) In response to that inquiry, Uber responded on August 24, 2021, and for the first time produced records showing that Spann was indeed logged into Uber's application at the time of the accident. (ECF No. 28, Uber records (under seal).)

Thus, under the terms of the applicable insurance policies, Empire's policy does not provide coverage for Spann's July 29, 2019, accident, as he was logged into the Uber application at the time of the accident, and Allstate's policy would provide coverage, if claims for benefits under the Allstate policy are timely brought.

Empire states that it has received requests for payment of medical treatment, wage loss, and replacement services for and on behalf of Spann totaling more than

6

$377,000. (ECF No. 24-2, Empire's Payment Log.) Before Uber finally informed Empire on August 24, 2021, that Spann was logged into Uber's digital transportation network at the time of the July 29, 2019, accident, Empire had paid $225,776.65 to Spann's medical providers and replacement service providers, as well as for wage loss to Spann. At the summary judgment hearing, counsel for Empire stated that it was not seeking payment in this case for provider claims subject to other litigation, and that it is now seeking reimbursement in this case for $192,989.11 it has paid to or on behalf of Spann.

### 3.  The Allstate insurance policy

Uber procured insurance from Allstate for its Michigan drivers when they are logged into Uber's network. (ECF No. 24-4, Allstate discovery responses, PageID.554.)

Allstate first received notice of Spann's July 19, 2019, accident on February 6, 2020, when ESIS/General Motors Claims Unit representative Sean Kelly electronically notified Uber of the accident, and Uber forwarded that notice to Allstate, which was received by Allstate's liability adjuster Erin Contreras. (ECF No. 55-2, Contreras Aff. ¶ 3, PageID.1366.) Allstate then opened a claim file for the matter. (*Id.* ¶ 4.) It is part of Allstate's regular business practice to include in a claim file copies of any and all notices, emails, letters, communications, bills, invoices,

7

medical records, summaries of the contents of conversations, oral statements, or other material related to the accident. (*Id.*)

The February 6, 2020 "First Notice of Loss" indicated that the vehicle was not "being used for transportation as a Ride of Hire such as Uber of Lyft," (ECF No. 55-3, First Notice of Loss, PageID.1372), which the parties now acknowledge is incorrect. That Notice indicates that there were no fatalities but otherwise does not contain any indication regarding whether there were any injuries to the person(s) involved in the accident. (*Id.* PageID.1374-75.)

Contreras, the Allstate liability adjuster, asserts that she investigated the Spann accident claim to determine what liability Allstate might have. (ECF No. 55-2, Contreras Aff. ¶ 6, PageID.1366-67.) She avers that she and another liability adjuster made several attempts to contact Spann through the contact information Spann provided to Uber, including calling and emailing Spann, but that Spann never responded to Allstate's communications. (*Id.* ¶ 7, PageID.1367.)

Contreras also obtained a copy of the police report for Spann's accident. (*Id.* ¶ 8, PageID.1367.) The July 29, 2019, police report states that Spann "refused" an ambulance or hospital and listed "0" under injury. (ECF No. 55-5, Police Report, PageID.1385.)

On February 21, 2020, Contreras spoke by telephone to an attorney representing Spann. (ECF No. 55-2, Contreras Aff. ¶ 9, PageID.1367.) Contreras placed a summary of that conversation in the claim file. (ECF No. 55-6, Claim file excerpt, PageID.1387.) According to the summary, Spann's attorney stated that Spann was not at fault for the accident, and that another insurer, Progressive, had accepted full responsibility for the accident. (*Id.*) The summary makes no mention of any statement or inquiry regarding any injuries.

On February 25, 2020, Contreras received the results of an Insurance Services Office Inc. (ISO) search for any insurance claims related to Spann's July 29, 2019, accident, and the search showed no matching claims for Spann. (ECF No. 55-2, Contreras Aff. ¶ 10, PageID.1367.) Contreras asserted that because Allstate had received no information that Spann was injured in the accident, she concluded her investigation of Spann's accident and did not open a PIP claim. (*Id.* ¶ 11, PageID.1367.) Contreras explained that it was Allstate's policy to open a PIP claim with respect to an accident only if it receives notice of possible injuries caused by the accident. (*Id.*)

According to Allstate, it did not receive any bills, liens, notices of any kind by Spann or on his behalf, or any other information that Spann was injured in the July 29, 2019, accident until over two years later, on October 25, 2021, when it was

9

served with a lawsuit in a separate action by one of Spann's medical providers, Michigan Head and Spine Institute. (ECF No. 55-7, Hubert Aff. ¶ 11, PageID.1393) (ECF No. 55-9, Claim file excerpt, PageID.1394-95.)

Allstate asserts that Spann first asserted a claim against Allstate seeking payment of No-Fault Act benefits on April 13, 2022, the date Spann filed his First Amended Complaint naming Allstate as a defendant in this case. Empire first asserted a cross-claim against Allstate on May 2, 2022.

## B.    Procedural History

### 1.    The pleadings

Spann filed this civil action against Defendant Empire in the Wayne County Circuit Court on February 18, 2021, alleging denial of PIP benefits under the Michigan No-Fault Act allegedly arising out of the July 29, 2019, motor vehicle accident. (ECF No. 1-2, Compl., PageID.11-15.) On May 6, 2021, Defendant Empire timely removed this case to this Court based on diversity jurisdiction. (ECF No. 1, Notice of Removal, PageID.1-6.)

Spann filed his First Amended Complaint, adding Allstate as a Defendant, on April 13, 2022. (ECF No. 17, First Am. Compl.) Spann alleges that both Empire and Allstate have unreasonably denied or delayed payment of PIP benefits under Michigan's No-Fault Act.

10

On May 2, 2022, Empire filed an Answer to Spann's First Amended Complaint, and a Cross-Claim against Allstate. (ECF No. 19, Empire Answer/Cross-Complaint.) Empire asserts that its Policy does not provide coverage when vehicles are used to transport persons for hire or when the driver is logged into the Uber "digital transportation network," as it now knows Spann was, and thus Spann is not covered by the Empire policy for the July 29, 2019, accident. Empire asserts that Spann is instead covered by the Allstate insurance policy procured by Uber. Empire seeks reimbursement from Allstate for PIP benefits Empire has paid to and on behalf of Spann.

On June 1, 2022, Cross-Defendant Allstate filed its Answer to Empire's Cross-Claim (ECF No. 22, Cross-Defendant Allstate Answer), and on July 12, 2022, Defendant Allstate filed its Answer to Spann's First Amended Complaint. (ECF No. 35, Allstate Answer.)

### 2. Empire's Motion for Summary Judgment (ECF No. 24)

On June 3, 2022, Empire filed its Motion for Summary Judgment against Spann and Allstate. (ECF No. 24, Empire Mot.) Empire argues that there is no genuine issue of material fact that Uber's insurer, Allstate – not Empire – is obligated to pay Spann's PIP benefits because Spann was logged into Uber's digital transportation network when the July 29, 2019, accident occurred. Empire asserts

11

that its policy does not cover Spann's PIP benefits, and Allstate must reimburse Empire for PIP benefits that Empire previously paid to or on behalf of Spann.

Spann did not file a Response in opposition to Empire's Motion for Summary Judgment.

Cross-Defendant Allstate filed a Response in opposition to Empire's Motion for Summary Judgment on June 27, 2022. (ECF No. 32, Allstate Resp.) Allstate argues that it did not have notice of Spann's injury within one year of the July 29, 2019, accident, and thus any subrogation claims by Empire are barred by the one-year statute of limitations and the one-year-back notice requirements under Mich. Comp. Laws 500.3145.

Empire filed a Reply brief in support of its summary judgment motion on July 11, 2022 (ECF No. 33), and also filed a Motion to Reopen Discovery that same day. (ECF No. 34.) Because Allstate joined this case after the close of discovery, the Court granted Empire's Motion to Reopen Discovery and reopened discovery "for the limited purpose of conducting depositions of Allstate's witnesses, Jessica Hubert and Erin Contreras, and to serve requests for production of documents on Allstate related to Allstate's notice defense." (ECF No. 36, Order.)

Following the close of the limited discovery, and pursuant to the Court's order allowing supplemental briefs, Empire filed a supplemental brief in support of its

12

motion for summary judgment on February 2, 2023 (ECF No. 53), and Allstate filed a response to that supplemental brief on February 13, 2023 (ECF No. 54).

### 3.      Allstate's Motion for Summary Judgment (ECF No. 55)

On February 13, 2023, Allstate filed its Motion for Summary Judgment against Spann and Cross-Plaintiff Empire. (ECF No. 55, Allstate Mot.) Allstate argues that Spann's and Empire's claims for PIP benefits are time-barred under Michigan's No Fault Act by Spann's failure to give written notice of the nature of his injuries within one year of his accident, and by the one-year-back rule that bars claims for losses incurred more than one year before the date the action was commenced, under Mich. Comp. Laws 500.3145.

Spann did not file a Response in opposition to Allstate's motion for summary judgment.

On March 6, 2023, Empire filed its Response in opposition to Allstate's motion for summary judgment. (ECF No. 56, Empire Resp.) Empire argues that its recoupment claims are not claims for PIP benefits under the Michigan No Fault Act, and thus are not barred by Act's one year statute of limitations or its one-year-back rule and are instead subject to Michigan's six-year "catch-all" statute of limitations.

Allstate filed a Reply brief in support of its Motion for Summary Judgment on March 14, 2023. (ECF No. 57, Allstate Reply.) Allstate argues that Empire is

seeking payment of No-Fault benefits, and thus its subrogation claim is barred by the No-Fault Act's statute of limitations and one-year-back rule.

## II.  LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere

14

possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

# III. ANALYSIS

**A.    Spann's Claims Against Empire are Dismissed Because the Empire Insurance Policy Does Not Provide Coverage When Spann Was Logged Into a Digital Transportation Network at the Time of the Accident**

It is undisputed that Spann was logged into a digital transportation network when the July 29, 2019, accident occurred. It is further undisputed that Empire's Policy expressly excludes coverage for automobiles while "operated by a person logged into a 'digital transportation network.'" Empire's policy harmonizes with the Michigan No-Fault Act, which allows insurers to exclude coverage for PIP benefits while a driver is logged into a digital transportation network. *See* Mich. Comp. Laws 500.3017(1) (eliminating the insurance requirement when a driver "is logged into a transportation network company's digital network or while a transportation network company driver is providing a prearranged ride.").[1]

Thus, because the Empire insurance policy did not provide coverage for the 2019 Chevrolet Malibu when Spann was logged into the Uber network at the time

---

[1] As discussed more fully *infra*, digital transportation network company drivers are not left without PIP coverage because the Michigan Limousine, Taxicab, and Transportation Network Company Act requires transportation network companies to maintain automobile insurance on personal vehicles, including personal protection and property protection insurance, while the driver is logged into the company's digital network or engaged in a prearranged ride for the company. *See* Mich. Comp. Laws 257.2123.

of the July 29, 2019 accident, the policy does not provide PIP benefits to Spann for that accident, and Spann therefore is not entitled to PIP benefits from Empire. *See Pioneer State Mut. Ins. Co. v. Dells*, 301 Mich. App. 368, 378 (2013) ("A court cannot hold an insurance company liable for a risk that it did not assume.") (citing *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 354 (1999)).

Spann did not file a response to Empire's motion for summary judgment, and thus he has waived any opposition. When a plaintiff "fails to address [a claim] in response to a motion for summary judgment," the claim is deemed waived. *Haddad v. Sec'y, U.S. Dept. of Homeland Sec.*, 610 F. App'x 567, 568-69 (6th Cir. 2015) (quoting *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013)). Where claims are so waived, district courts in this Circuit grant summary judgment as a matter of course. *See, e.g., Mahindra & Mahindra Ltd. v. FCA US LLC*, 503 F. Supp. 3d 542, 554 (E.D. Mich. 2020) (holding plaintiff entitled to summary judgment because defendant failed to substantively respond to plaintiff's arguments); *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 737 (E.D. Mich. 2013) (failure to respond to an argument in a dispositive motion "is grounds for the court to deem opposition waived"); *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 809 (M.D. Tenn. 2011) ("The plaintiff's leaving these claims wholly unaddressed and unsupported leads the Court to conclude that the plaintiff no longer

17

wishes to pursue them."); *Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005) ("The Court finds that Plaintiff has abandoned any claim to FMLA relief on a theory of retaliatory harassment by failing to address this theory in responsive briefing.").

Because the undisputed facts show that Empire is not obligated to pay Spann's PIP benefits arising out of the July 29, 2019, motor vehicle accident, Empire's motion for summary judgment as to Plaintiff Spann will be granted and Spann's claims against Empire are dismissed with prejudice.

### B.   Allstate's Policy Provided Coverage for the 2019 Chevrolet Malibu While Spann was Logged Into Uber's Digital Transportation Network

As discussed above, it is now undisputed that Spann was logged into Uber's digital transportation network at the time of the July 29, 2019, accident.

The Michigan Limousine, Taxicab, and Transportation Network Company Act requires transportation network companies to maintain automobile insurance on personal vehicles, including personal protection and property protection insurance, while the driver is logged into the company's digital network or engaged in a prearranged ride for the company. *See* Mich. Comp. Laws 257.2123. As required by that Act, Uber procured the Allstate Insurance Policy, which provided PIP benefits to Spann when he was logged into Uber's digital transportation network.

18

Allstate argues, however, that Spann's and Empire's claims against it are

barred by the No-Fault Act's one year statute of limitations and one-year-back rule.

### C.    Spann's Claims Against Allstate for PIP Benefits are Time Barred

Allstate argues that Spann's claims against it are barred by the Michigan No-

Fault Act's one-year statute of limitations at Mich. Comp. Laws 500.3145(1).

The Michigan No-Fault Act provides that:

An action for recovery of personal protection insurance benefits payable under this chapter for an accidental bodily injury may not be commenced later than 1 year after the date of the accident that caused the injury *unless written notice of injury as provided in subsection (4)* has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury.

Mich. Comp. Laws 500.3145(1) (emphasis added).

The Act further provides:

The notice of injury required by subsection (1) may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits for the injury, or by someone in the person's behalf. *The notice must give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place, and nature of the person's injury*.

Mich. Comp. Laws 500.3145(4) (emphasis added).

Accordingly, the No-Fault Act imposes a one-year statute of limitations from

the date of an insured's accident to commence an action for recovery of PIP benefits,

subject to two potential exceptions: (1) a "notice" exception, which avoids the statute of limitations if a statutorily-sufficient "written notice of injury … has been given to the insurer within one year after the accident," and (2) a "payment" exception, which avoids the statute of limitations if "the insurer has previously made payment of personal protection insurance benefits for the injury." *Perkovic v. Zurich American Ins. Co.*, 500 Mich. 44, 50 (2017). The No-Fault Act is remedial in nature and thus "courts must liberally construe [the Act's] provisions in favor of the persons who are its intended beneficiaries." *Frierson v. W. American Ins. Co.*, 261 Mich. App. 732, 734 (2004) (quotation marks and citation omitted). "Further, courts should not abandon common sense when construing a statute." *Id.* (quotation marks and citation omitted).

Allstate asserts that Spann first filed suit against it on April 13, 2022, more than two years after the date of his accident on July 29, 2019, and thus well past the No-Fault Act's one-year statute of limitations. Allstate argues that the summary judgment evidence here shows that neither of the two exceptions to the one-year limitation on commencing a No-Fault action is available to revive Spann's untimely claim, asserting:

(1) Allstate first received notice of Spann's alleged motor vehicle accident on February 6, 2020, more than six months after it occurred, at which time it opened a claim for the matter and began an investigation but was not

advised that Spann had any injuries at that time. (ECF No. 55-2, Contreras Aff. ¶ 3, PageID.1366).

(2) Allstate repeatedly and unsuccessfully sought to contact Spann to obtain a statement and information about the accident in February 2020. (*Id.* ¶ 7, PageID.1367).

(3) In February 2020, Allstate obtained a copy of a police report that showed there were no injuries from Spann's accident. (*Id.* ¶ 8) (ECF No. 55-5, Police Report, PageID.1385).

(4) An Allstate representative spoke to Spann's attorney in February 2020 but, as reflected in the contemporaneous claim file notes made by Allstate's representative summarizing the conversation, the attorney did not report any injuries to Allstate. (ECF No. 55-2, Contreras Aff. ¶ 9, PageID.1367) (ECF No. 55-6, Claim File excerpt, PageID.1387).

(5) Allstate did not open a PIP claim with respect to Spann's injuries in February 2020, which it would have done had it been notified of any injuries caused by the accident at that time. (ECF No. 55-2, Contreras Aff. ¶ 11, PageID.1367-68).

(6) Allstate received no other information about Spann's accident, including any information about any alleged injuries to Spann, until October 25, 2021, when it was served with a lawsuit by Michigan Head and Spine Institute. (ECF No. 55-7, Hubert Aff. ¶ 11, PageID.1393) (ECF No. 55-8, Claim File excerpt, PageID.1394-95).

(ECF No. 55, Allstate Mot., PageID.1349-50.)

Spann did not file a response to Allstate's motion for summary judgment, and thus has waived any opposition to it. As explained above, when a plaintiff "fails to address [a claim] in response to a motion for summary judgment," the claim is deemed waived, *Haddad*, 610 F. App'x at 568-69, and where claims are so waived,

district courts in this Circuit grant summary judgment as a matter of course. *See,*

*e.g., Mahindra & Mahindra Ltd.*, 503 F. Supp. 3d at 554 (holding plaintiff entitled

to summary judgment because defendant failed to substantively respond to

plaintiff's arguments).

Accordingly, the Court grants Allstate's motion for summary judgment

against Spann and dismisses Spann's claims against Allstate with prejudice.

### D.    Empire's Claims Against Allstate are Time Barred

Allstate argues that Empire's claims are barred by the one-year statute of

limitations, just as Spann's are. Empire argues in response that it is not seeking No-

Fault benefits, and thus its claims against Allstate are not time-barred. The Court

agrees with Allstate.

### 1.  Empire is Seeking No-Fault benefits from Allstate

Empire first argues that its claims against Allstate are not barred by the No-

Fault Act's one-year limitations period because it is not seeking benefits under the

No-Fault Act from Allstate. Empire contends that because it had no obligations

under the No-Fault Act to Spann (because he was logged into the Uber digital

transportation network at the time of the accident), its payments to and on behalf of

Spann were not paid under the No-Fault Act and Empire is asserting "only common

law rights of recovery[.]" (ECF No. 56, Empire Resp., PageID.1441-44.) Empire

22

argues that its claim is properly viewed as a claim for recoupment, governed by the catch-all six-year statute of limitations in Mich. Comp. Laws 600.5813. (*Id.*)

The Court is unpersuaded by Empire's argument and finds instead that Empire is seeking No-Fault benefits from Allstate.

Empire asserts three claims against Allstate in its cross-complaint: (1) subrogation; (2) recoupment; and (3) a declaratory judgment that Allstate is required to pay Spann's PIP benefits. (ECF No. 19, Empire Cross-Complaint, PageID.112-14.) In these claims, Empire "seeks an Order requiring Allstate to reimburse Empire for PIP benefits that Empire has paid to and on behalf of [Spann], as well as costs, interest and attorney fees, and any other relief as the Court deems appropriate," and "to pay additional benefits allegedly incurred by [Spann] and future PIP benefits." (*Id.*)[2]

---

[2] As Allstate correctly asserts in its Motion for Summary Judgment, Empire's declaratory judgment claim – seeking a declaratory judgment that "Allstate is the responsible insurer for all of [Spann's] PIP benefits related to the alleged accident," is plainly barred by Spann's failure to give written notice of his injuries to Allstate within one year of his accident, as found *infra*, as Empire cannot obtain a declaratory judgment that Allstate must pay claims for PIP benefits to Spann that Spann himself cannot assert. (*See* ECF No. 55, Allstate Mot., PageID.1355-56.) Because Allstate is entitled to summary judgment on Spann's claims for payment of PIP benefits, Empire cannot be entitled to a judgment declaring that Allstate is required to pay PIP benefits to Spann, and this claim is dismissed.

23

The Michigan Court of Appeals has held that "when a plaintiff insurance company mistakenly pays no-fault benefits, while another defendant insurance company had the obligation to pay the benefits in the first place because of it having a higher priority in the no-fault statutory scheme, the plaintiff's claim for reimbursement from the defendant is one of subrogation, and the limitations period in MCL 500.3145(1) applies." *Suburban Mobility Auth. for Reg'l Transp. v. Auto Club Ins. Ass'n*, No. 324132, 2016 WL 191923, at *2 (Mich. Ct. App. Jan. 14, 2016) (citing *Titan Ins. v. North Pointe Ins.*, 270 Mich. App. 339, 343-44 (2006)). That is precisely the claim Empire asserts here against Allstate. *See Button v. Progressive Mich. Ins. Co.*, Nos. 314836, 319312, 2014 WL 4375729, at *3 (Mich. Ct. App. Sept. 4, 2014) (holding that the action by an insurer who mistakenly paid benefits on behalf of an injured party against the priority payee, "even to the extent labeled a common-law claim for reimbursement for mistaken payments, is subject to the one-year-back rule[]" in 500.3154(1)). "[T]he statute does not provide, as it could have, a separate limitations period in the event of mistake." *Id.* (citing *Titan Ins.*, 270 Mich. App. at 347). "A no-fault insurer's claim for reimbursement on a subrogation theory is subject to the one-year statute of limitations set forth by MCL 500.3145(1), as unyielding as that rule may be." *Titan Ins. Co. v. State Farm Mut. Auto. Ins. Co.*,

No. 321112, 2015 WL 4746240, at *3 (Mich. Ct. App. Aug. 11, 2015) (citing *Titan Ins.*, 270 Mich. App. at 343).

In a subrogation action, the subrogee [Empire] "stands in the shoes of the subrogor [Spann] and acquires no greater rights than those possessed by the subrogor." *Yerkovich v. AAA*, 461 Mich. 732, 737 (2000). Empire argues that its claim here is different because its policy did not provide coverage for Spann while he was logged into the Uber application. However, "just because [Spann] was not entitled to no-fault benefits from [Empire], [Empire's] subsequent payment of benefits and its attempt to recoup those expenses from [Allstate] do not transform its claim into something other than subrogation." *Suburban Mobility*, 2016 WL 191923, at *3.

Thus, Empire here stands in the shoes of Spann, and it is entitled to no greater rights against Allstate than Spann has. Allstate argues that just as Spann's claims against Allstate are barred by the one-year limitations period of the Michigan No Fault Act, so are Empire's subrogation claims.

The Court finds that there is no dispute that Empire is seeking reimbursement of No-Fault benefits from Allstate. Empire's belated discovery that its Policy did not provide coverage for the July 29, 2019 accident, because of Uber's failure to timely provide evidence to Empire that Spann was in fact logged into Uber's digital

transportation network at the time of the accident, does not save Empire's subrogation claim against Allstate. *See Titan Ins.,* 270 Mich. App. at 344-45 ("Belated discovery of the existence of the primary insurer does not operate to equitably toll the statute of limitations.").

Empire relies in part on *Madden v. Employers Insurance of Wausau*, 168 Mich. App. 33 (1988), as supporting its argument that its request for the recovery of no-fault benefits paid by mistake is not an action for subrogation and therefore does not implicate Mich. Comp. Laws 500.3145(1). However, *Madden* was issued before November 1, 1990, and is not binding pursuant to MCR 7.215(J)(1), which provides that "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule."

Further, subsequent, published decisions by the Michigan Court of Appeals have considered, and rejected, *Madden*, and held that the one-year statute of limitations properly applied when an insurer is suing another insurer on the basis that it paid benefits by mistake for which the defendant insurer was liable. *See, e.g., Titan*, 270 Mich. App. at 343-44 (explaining that whatever label was attached to a claim by plaintiff, "actions between no-fault insurers for recovery of monies

26

mistakenly paid by the secondary insurer" were claims of subrogation and subject to the limitations period in Mich. Comp. Laws 500.3145(1)); *Amerisure Cos. v. State Farm Mut. Auto. Ins. Co.*, 222 Mich. App. 97, 102-03 (1997) (rejecting *Madden* and holding that "actions between no-fault insurers for recovery of monies mistakenly paid by the secondary insurer" were claims of subrogation and subject to the limitations period in Mich. Comp. Laws 500.3145(1)); *see also Suburban Mobility*, 2016 WL 191923, at *3 (recognizing that *Madden*'s holding has been rejected).[3]

The Court determines the nature of Empire's claims by looking at the nature of the claim that Spann would have against Allstate. *Progressive Mich. Auto. Ins. Co. v. Nat'l Cas. Co.*, No. 14-13859, 2015 WL 6082088, at 3 (E.D. Mich. Oct. 15, 2015) ("The nature of the lawsuit by a no-fault carrier in a subrogation action is

---

[3] The additional cases Empire relies on in its Response brief do not support a different finding. In *Auto Club Insurance Association v. New York Life Insurance Company*, 440 Mich. 126 (1992), the No-Fault insurer was entitled to the benefit of the six-year statute of limitations applicable to ERISA health plans when claiming payment from the group medical plan, because that is the same claim the subrogor claimant would have had. In *Hofmann v. Auto Club Insurance Association*, 211 Mich. App. 55, 117-18 (1995), the no-fault insurer sought to recover payments to medical providers for overcharges and charges outside the scope of chiropractic *from those medical providers*, in other words non-PIP payments and not from another no-fault insurer. The *Hofmann* court held that because none of the counterclaims for reimbursement from the recipients of payments involve actions for the recovery of no-fault benefits that are "payable under [the Act]," the No-Fault Act's one year statute of limitations did not apply.

determined by looking at the nature of the claim that the insured would have against the primary insure[r].") (citation omitted); *Auto Club Ins. Ass'n v. New York Life Ins. Co.*, 440 Mich. 126, 135 (1992). Here, that would be a claim for PIP benefits, and it is governed by the No-Fault Act's one-year statute of limitations. *See American Med. Sec., Inc. v. Auto Club Ins. of Michigan*, 238 F.3d 743, 751 (6th Cir. 2001) ("Simply put, *Titan* reiterated and confirmed what the Michigan courts have consistently held: that § 3145 applies to reimbursement suits between no-fault insurers."); *Progressive*, 2015 WL 6082088, at *3 ("As Davis's claim against National would have been for benefits under Michigan's no-fault act, Progressive's subrogation action is a no-fault claim as well.").

### 2. Empire's claims against Allstate are barred by the No-Fault Act's one-year statute of limitations

Allstate argues that Spann did not provide the timely and appropriate statutory written notice of injury under the No-Fault Act. The No Fault Act provides that the notice must be in writing and "shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place *and nature of his injury*." Mich. Comp. Laws 500.3145(1) (emphasis added). The statute, however, "does not mandate any particular format for this notice, nor does it require language "explicitly indicating a possible claim for benefits." *Perkovic*, 500 Mich.

28

at 53-54 (noting that the Legislature could have elected to include such language in the statute, but it did not). Instead, substantial compliance with the purpose of Mich. Comp. Laws 500.3145(1) is sufficient to preserve a claim for No-Fault benefits. *Id.* at 52. And the statute only requires "the kind of notice that an ordinary layperson can provide." *Dillon v. State Farm Mut. Auto. Ins. Co.*, 501 Mich. 915 (2017) (explaining that simply providing "[a] description of symptoms that are traceable to a diagnosed injury" will suffice as notice of the "nature of the injury"). However, the statute requires more than mere notice that the claimant was "physically injured" – it must describe the nature of the injuries, which "refers to an injury's inherent characteristics." *Id.*

Allstate argues that the summary judgment evidence here establishes that it did not receive written notice of the nature of Spann's injuries within one year of the date of his accident. As discussed above, Allstate asserts that the summary judgment evidence demonstrates:

(1) Allstate first received notice of Spann's alleged motor vehicle accident on February 6, 2020, more than six months after it occurred, at which time it opened a claim for the matter and began an investigation but was not advised that Spann had any injuries at that time. (ECF No. 55-2, Contreras Aff. ¶ 3, PageID.1366).

(2) Allstate repeatedly and unsuccessfully sought to contact Spann to obtain a statement and information about the accident in February 2020. (*Id.* ¶ 7, PageID.1367).

29

(3) In February 2020, Allstate obtained a copy of a July 29, 2019, police report that showed there were no injuries from Spann's accident. (*Id.* ¶ 8) (ECF No. 55-5, Police Report, PageID.1385).

(4) An Allstate representative spoke to Spann's attorney in February 2020 but, as reflected in the contemporaneous claim file notes made by Allstate's representative summarizing the conversation, the attorney did not report any injuries to Allstate. (ECF No. 55-2, Contreras Aff. ¶ 9, PageID.1367) (ECF No. 55-6, Claim File excerpt, PageID.1387).

(5) Allstate did not open a PIP claim with respect to Spann's injuries in February 2020, which it would have done had it been notified of any injuries caused by the accident at that time. (ECF No. 55-2, Contreras Aff. ¶ 11, PageID.1367-68).

(6) Allstate received no other information about Spann's accident, including any information about any alleged injuries to Spann, until October 25, 2021, when it was served with a lawsuit by Michigan Head and Spine Institute. (ECF No. 55-7, Hubert Aff. ¶ 11, PageID.1393) (ECF No. 55-8, Claim File excerpt, PageID.1394-95).

(ECF No. 55, Allstate Mot., PageID.1349-50.)

Empire argues in its Response brief that a genuine issue of material fact exists regarding whether Allstate had notice of the injury. (ECF No. 56, Empire Resp., PageID.1445-46.) Empire contends that: (1) Contreras's February 6, 2020, email asked Spann to call her to "provide a statement and discuss the injuries and damages," (2) Allstate's electronic record flagged for "Injury and Compensation," and (3) Contreras's conversation with Spann's attorney on February 21, 2020, to discuss liability and Allstate's involvement, all together create an issue of fact as to

30

notice. (*Id.*) Empire asserts that all of this activity occurred within one year of Spann's accident and "evince, at a minimum, a disputed factual question on whether Allstate had notice of Spann's injuries." (*Id.*) Empire does not explain, however, how any of these documents or communications constitute statutorily-sufficient written notice of the "nature" of Spann's claimed injuries within one year of the accident.

The Court finds that there is no summary judgment evidence that Allstate had the requisite statutory written notice of the "nature" of Spann's alleged injuries arising from the July 29, 2019, motor vehicle accident within one year of the accident. The February 6, 2020, notice Allstate received from the ESIS/General Motors Claim Unit representative did not mention any injuries. (ECF No. 55-2, Contreras Aff. ¶ 3, PageID.1366.) Allstate's form "First Notice of Loss Snapshot" only indicates no fatalities under the "Injury Details" portion of the notice but is otherwise silent regarding injuries. (ECF No. 55-3, First Notice of Loss Snapshot, PageID.1374-75.) Allstate obtained a copy of the July 29, 2019, police report, which also did not indicate any injuries, and which stated that Spann "appeared normal" and refused an ambulance and the hospital. (ECF No. 55-5, Police Report, PageID.1385.) And, there was no report of any injuries to Spann when Contreras spoke to Spann's attorney in February 2020. (ECF No. 55-6, Claim File excerpt,

PageID.1387.) Thus, there is no summary judgment evidence of written notice to Allstate of any injury to Spann from the July 29, 2019, accident, much less notice of the "nature" of any alleged injury.

Contrary to Empire's argument, Allstate's February 6, 2020, email to Spann and Allstate's electronic "Participant" record do not provide summary judgment evidence supporting the requisite statutory notice under the No-Fault Act. The email asks Spann to contact Contreras "to provide a statement and discuss the injuries and damages." However, even construing that email liberally to imply that Allstate had notice of potential injuries from the accident, "merely providing notice that [he] was *physically* injured" is not enough under the Act and "ignores the requirement that the notice describe the 'nature of [his] injury.'" *Dillon*, 501 Mich. 915.

Similarly, Allstate's electronic record with a checkmark by "Injury and Compensation" provides no indication as to the "nature" of Spann's claimed injuries. As the Michigan Supreme Court explained, "[i]f the Legislature had intended for notice of general physical injury to suffice, it would have stopped at 'notice of injury.'" *Id.*

The Michigan Court of Appeals' decision in *Morrissette v. Indian Harbor Insurance Company*, No. 359503, 2022 WL 17072815 (Mich. Ct. App. Nov. 17, 2022), though unpublished is instructive. In *Morrissette*, the plaintiff allegedly

sustained injuries in a January 29, 2019, motor vehicle accident while operating her 2009 Ford Escape as a driver for Lyft. *Id.* at *1. Plaintiff did not immediately seek medical attention, and she reported the accident to Lyft. Plaintiff subsequently applied for PIP benefits through her insurer, AAA, and then filed suit against AAA following its denial of benefits. *Id.* The trial court granted AAA's motion for summary judgment because of a business pursuits exclusion in AAA's policy. *Id.* The plaintiff did not identify defendant Indian Harbor Insurance Company as Lyft's insurer until her litigation with AAA had commenced. *Id.* The plaintiff then filed her complaint against Indian Harbor on July 27, 2020, more than one year after the date of the accident. *Id.* The trial court granted Indian Harbor's motion for summary judgment, finding that the plaintiff's claims were time barred under Mich. Comp. Laws 500.3145(1) because written notice of the injury was not furnished to Indian Harbor within one year of the accident. *Id.*

On appeal, the Michigan Court of Appeals affirmed, finding that the plaintiff's timely notice to her insurer, AAA, and her employer, Lyft, did not constitute notice to defendant Indian Harbor for the purposes of Mich. Comp. Laws 500.3145. *Id.* at *3. The Court of Appeals stated that "plaintiff failed to demonstrate how a contractual relationship between defendant insurer and its insured, Lyft, would establish an agency relationship within the meaning of the statute and thus constitute

33

notice to the insurer. *Id.* (citing *Boss v. Wolverine Ins. Co.*, 123 Mich. App. 175, 177 (1983) (holding that absent evidence that an agency relationship had been created between defendant insurer and its insured, notice provided by an injured plaintiff to his employer, the insured, did not constitute notice to the insurer)).

The Michigan Court of Appeals further held that the plaintiff failed to allege any unusual circumstances providing a basis to invoke judicial equitable powers as a means to disregard the plain language of Mich. Comp. Laws 500.3145(1). *Id.* at *4. The court stated that the plaintiff "had not cited any fraud, mutual mistake, or other conduct *by defendant [insurer]* that could have induced her action or inaction," and that her "inability to identify defendant [insurer] as the correct insurer also does not warrant tolling. *Id.* (emphasis added).

In this case, there is no evidence that Spann, or anyone else, timely provided statutorily sufficient written notice to Allstate of *any* injuries arising from the July 29, 2019, accident, much less notice of the "nature" of any claimed injuries. Accordingly, the Court finds that Spann's, and thus Empire's, claims against Allstate are barred by the applicable statute of limitations and dismisses those claims with prejudice.

Allstate also argues that the "payment" exception to the No-Fault Act's one-year statute of limitations does not apply because Allstate had not received, let alone

paid, any claims for PIP benefits to or for the benefit of Spann prior to being brought into this lawsuit. (ECF No. 55, Allstate Mot., PageID.1351-52.) Allstate asserts that, to the extent Spann or Empire argue that Allstate's February 2022 settlement of a separate provider lawsuit filed against it somehow revives claims that are already time-barred, that claim fails. Allstate contends that a payment of a settlement of a lawsuit, based on several factors, including the cost of litigation, interest, and potential attorney fees, is not a "payment of [PIP] benefits for the injury" under the No-Fault Act. Allstate argues that a settlement payment made after other claims are already time-barred does not resuscitate those time-barred claims. Allstate explained that it chose to settle one provider action more than a year and a half after Spann's ability to assert claims for PIP benefits already were time-barred. Allstate argues that Spann and Empire cite no authority for the proposition that by paying a small settlement in separate litigation Allstate is required by the Michigan No-Fault Act to pay claims that were previously time-barred.

Empire does not respond to this argument in its Response to Allstate's motion for summary judgment. However, Empire asserts in its Motion for Summary Judgment that "Allstate recognized its obligation to pay Spann's PIP benefits by settling with another Spann provider after Empire provided the Uber records to Allstate's counsel in a case filed against both Empire and Allstate." (ECF No. 24,

35

Empire Mot., PageID.525 (citing ECF No. 24-5, Stipulated Order of Dismissal in *MMT Integrative Services v. Empire, et al.*, Case No. 21-01970-GC (44th Judicial District Court of Michigan), PageID.572-73).) Empire further contends in its Reply brief to its motion for summary judgment that Allstate's February 24, 2022, payment of a settlement in that action with another of Spann's providers satisfies the "payment" exception to the No-Fault Act's statute of limitations. (ECF No. 33, Empire Reply, PageID.1045-46.) Empire however cites no authority for the proposition that a settlement constitutes "payment of [PIP] benefits for the injury" under the No-Fault Act.

Without any information regarding the claims in the state court litigation or the terms of any settlement, and without any supporting case law, the Court finds that Empire has not provided sufficient summary judgment evidence of a "payment of [PIP] benefits" by Allstate for Spann's alleged injuries sufficient to meet the "payment exception" to the one-year statute of limitations in a No-Fault action.

In any event, even if Allstate's February 2022 settlement payment could be considered a "payment of [PIP] benefits for the injury" of Spann under Mich. Comp. Laws 500.3145(1), the Court finds that Empire's claims against Allstate nevertheless are barred by the No-Fault Act's one-year-back rule, as discussed next.

### E.   Empire's Claims Against Allstate are Barred by the One-Year Back Rule

Allstate argues that, even if the No-Fault Act's statute of limitations did not bar Empire's claims, Empire would still be prohibited from asserting its claims against Allstate in this case by the No-Fault Act's "one-year-back rule" which provides:

> [I]f the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss, or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.

Mich. Comp. Laws 500.3145(2). Thus, the one-year-back rule limits recovery in an action for PIP benefits to those losses incurred within one year preceding the commencement of an action to recover such benefits. *Button*, 2014 WL 4375729, at *3 (citing *Devillers v. Auto Club Ins. Ass'n*, 473 Mich. 562, 574 (2005)). This rule applies to a subrogation claim. *Id.*; *Titan*, 270 Mich. App. at 346-47. Further, the one-year-back rule is not subject to judicial tolling, and it "'draws a strict line, which must be followed even with unfair results.'" *State Farm Mut. Auto. Ins. Co. v. Travelers Indem. Co. of Conn.*, No. 1:19-cv-653, 2020 WL 5588771, at *2 (W.D. Mich. Sept. 4, 2020) (quoting *Bronson Methodist Hosp. v. Allstate Ins. Co.*, 286 Mich. App. 219, 229 (2009)). And, the one-year-back rule "appl[ies] to insurance

companies who 'stand in the shoes' of a claimant, as occurs when one insurance company seeks reimbursement for no-fault benefits that should have been paid by another." *Titan Ins. Co.*, 2015 WL 4746240, at *1.

Allstate argues that the "one-year-back rule" applies to No-Fault claims by an insured and to subrogation claims brought by one insurer against another. (ECF No. 55, Allstate Mot., PageID.1356, citing *Titan Ins.*, 270 Mich. App. at 345-46.) Allstate contends that all of the services at issue in Empire's cross-complaint are services allegedly incurred between August 2019 and December 2020. (*Id.* citing ECF No. 24-2, Empire Payment Log, PageID.542-47.)[4] All of those dates are more than one year before this action was commenced against Allstate, whether the Court considers the filing of Spann's First Amended Complaint on April 13, 2022, or Empire's cross-complaint on May 2, 2022.

Empire argues in its Response brief only that the one-year-back rule does not apply to bar its claim against Allstate because it contends that its claim is not for the recovery of PIP benefits. (ECF No. 56, Empire Resp., PageID.1446.)

---

[4] Counsel for Empire clarified at the August 2, 2023, hearing on Defendants' motions for summary judgment that Empire is no longer seeking recovery of PIP benefits paid to certain of Spann's providers that are separately litigating claims related to Spann's July 29, 2019, accident. Specifically, Empire no longer seeks recovery of PIP benefits paid to the following providers: Michigan Head and Spine; Spine Specialists; ZMC Pharmacy; and, Farmbrook/Wook.

However, as discussed above, Empire's claims against Allstate are equitable subrogation claims in which Empire stands in the shoes of Spann and its claims are subject to the strictures of the Michigan No-Fault Act. It does not matter what label Empire attaches to its claims, it is seeking to recover No-Fault benefits from Allstate. Indeed, in its cross-complaint, Empire asserts that "Allstate is liable to Empire for all PIP benefits Empire paid to and on behalf of Plaintiff," and that Empire "seeks an Order requiring Allstate to reimburse Empire for PIP benefits that Empire has paid." (ECF No. 19, Empire Cross-Complaint, ¶ 25, PageID.113.)

Thus, the Court finds that Empire's claims against Allstate, even if not time barred by the No-Fault Act's one-year statute of limitations, are barred by the Michigan No-Fault Act's one-year-back rule. *See State Farm Mut. Auto. Ins. Co.*, 2020 WL 5588771, at *2 ("The one-year back rule in § 500.3145(1) prevents State Farm from recovering benefits from Travelers that State Farm paid prior to July 10, 2018, to the individuals involved in the automobile accident giving rise to this lawsuit."); *Progressive Mich. Auto. Ins. Co.*, 2015 WL 6082088, at *4 (finding insurer's claim for reimbursement barred by the one-year-back rule).

### F.    Res Judicata

Finally, both Allstate and Empire argue that rulings by a Michigan state district court act as res judicata to the claims asserted here. (ECF No. 55, Allstate

Mot., PageID.1357) (ECF No. 56, Empire Resp. PageID.1443, 1447.) Specifically, Allstate argues that the Michigan state district court's September 13, 2022, ruling that claims for No-Fault benefits against Allstate related to Spann's accident were barred by the one-year statute of limitation acts as res judicata here. (ECF No. 55-10, Order, PageID.1430-31.) However, prior to issuing that decision, the same state district court granted Empire's motion for summary judgment against Allstate on June 2, 2022, (without any opinion or substantive explanation for the decision) and ordered Allstate to reimburse certain amounts Empire had paid to one of Spann's providers, Michigan Head & Spine. (ECF No. 56-5, Order, PageID.1551-52.) Empire argues that this order acts as res judicata.

Allstate explains in its Reply brief that these two rulings are clearly inconsistent, and Allstate is appealing the state district court's grant of summary judgment against it. Counsel for the parties subsequently explained at the August 2, 2023, summary judgment hearing that the Wayne County Circuit Court has since ruled in Allstate's favor, and that the decisions have now been appealed by Empire to the Michigan Court of Appeals, which appeal remains pending.

The Court declines to afford res judicata or collateral estoppel to either Empire or Allstate. Courts use the doctrine of res judicata to prevent multiple suits litigating the same cause of action. *Washington v. Sinai Hosp. of Greater Detroit*, 478 Mich.

40

412, 418 (2007). It bars a subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the claims in the second case were, or could have been, resolved in the first case. *Adair v. Michigan*, 470 Mich. 105, 121 (2004). "If the same facts or evidence would sustain both, the two actions are the same for the purpose of res judicata." *Peterson Novelties, Inc. v. Berkley*, 259 Mich. App. 1, 11 (2003) (citations omitted).

For collateral estoppel to apply, three elements must be satisfied: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the parties or privies must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682-684 (2004) (internal quotation marks and citations omitted). The party seeking the benefit of preclusion bears the burden of proof. *See Browning v. Levy*, 283 F.3d 761, 771-72 (6th Cir. 2002); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008) ("The party asserting the defense of res *judicata* bears the burden of proof.").

The parties have not met their burden here. Without a substantive opinion from the state courts explaining the facts and evidence considered by the state courts, the specific findings of the courts, and the bases of the inconsistent rulings granting the dismissal and summary judgment, this Court cannot know what issues the state

41

courts considered and the bases for the rulings. Empire in fact argues in its Response to Allstate's motion for summary judgment that there is no evidence that the payments sought in the state court action are in fact the same payments sought to be recovered here, and that "the overwhelming majority of the payments sought to be recovered in this case have **nothing to do** with Michigan Head and Spine." (ECF No. 56, Empire Resp., PageID.1446-47 (emphasis in original).)

The Court therefore declines to afford res judicata or collateral estoppel to either Empire or Allstate.

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Empire Fire and Marine Insurance Company's Motion for Summary Judgment (ECF No. 24), and **GRANTS** Allstate's Motion for Summary Judgment (ECF No. 55).

Specifically, the Court **GRANTS** both Empire's Motion for Summary Judgment and Allstate's Motion for Summary Judgment as to Plaintiff Spann, and **DISMISSES** Plaintiff Spann's claims against both Defendants **WITH PREJUDICE**.

42

The Court **DENIES** Empire's Motion for Summary Judgment as to Defendant/Cross-Defendant Allstate, and **GRANTS** Allstate's Motion for Summary Judgment as to Defendant/Cross-Plaintiff Empire, and **DISMISSES** Empire's cross-claim against Allstate **WITH PREJUDICE**.

This is a final order that closes the case.

IT IS SO ORDERED.

s/Paul D. Borman

Dated:  August 4, 2023      Paul D. Borman
                            United States District Judge

43